## Case No. 10,294.

### NORCROSS et al. v. GREELY.

[1 Curt. 114; 15 Law Rep. 149; 29 Hunt, Mer. Mag. 203.] [1]

Circuit Court, D. Massachusetts. May Term, 1852.

CUSTOMS DUTIES—APPRAISEMENT—INVOICE VALUE—COMMISSION—RATE—SUFFICIENCY OF PROTEST.

1. The tariff act of 30th of August, 1842 [5 Stat. 563], explained by the act of 3d of March, 1851 [9 Stat. 629], provides, that the value of the article upon which the duty is to be charged shall be ascertained in a certain manner, and that "to such value or price shall be added all costs and charges except insurance, and including, in every case a charge for commissions at the usual rates." *Held*, that, by the proper construction of this clause of the act, a commission should, in all cases, be added to the invoice value, although in fact no commission is paid, and although it is not customary for the importers of the article in question to pay any commission.

2. Where the rate of the commission charged and added by the collector, is that prescribed by the secretary of the treasury as the usual one, it is incumbent upon the merchant to show that it is higher than the rate usually paid, when any commission is paid.

3. The act of 26th of February, 1845 [5 Stat. 727], requires, that no action shall "be maintained against any collector to recover the amount of duties so paid, under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof." The merchant paid duties upon commissions, under protest, and the protest set forth this ground of objection alone to such payment,—that the merchant "pays no such commission:" *Held*, that the protest was insufficient, and that, consequently, the action could not be maintained.

[Cited in Pierson v. Lawrence, Case No. 11,-158.]

4. The merchant, in his suit to recover duties paid under protest, must be confined to such grounds of objection to the payment thereof as his protest contains.

[Cited in Burgess v. Converse, Case No. 2,-154; Pierson v. Lawrence, Id. 11,158; Davies v. Arthur, Id. 3,611, 96 U. S. 153.]

[This was an action by Otis Norcross and others against Philip Greely, Jr., the collector of the port of Boston, to recover a certain amount paid for duties claimed to have been illegally exacted.]

S. Bartlett and S. Bartlett, Jr., for plaintiffs.

George Lunt, Dist. Atty., for defendant.

CURTIS, Circuit Justice. This is an action for money had and received, to recover from the collector of the port of Boston an excess of duties, paid under protest by the plaintiffs, upon the importation of parcels of crockery ware, made at different dates, the earliest on the 22d day of February, 1851,

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice. 29 Hunt. Mer. Mag. 203, contains only a partial report.]

and the last on the 28th day of April, 1852. The complaint is, that in valuing the merchandise for the assessment of duties, there was added to the invoice cost, and to the other charges, a commission of two and one half per cent.

The plaintiffs have introduced evidence, tending to prove that, for many years, the usual course of trade, between England and the United States, in this species of merchandise, has been, for the dealer here to give orders for the particular articles desired by him, either to the manufacturer in England, or to some person here who was a correspondent of one or more of the English manufacturers, and accustomed to receive orders in their behalf. These persons have sometimes been agents of particular manufacturers, sent here to solicit orders for their employers. Sometimes they have been persons established in this country, to whom different manufacturers have been in the habit of transmitting their catalogues of articles and prices, together with their rates of discount, and, upon the information thus afforded, these persons have made contracts with the dealers in this country, and either transmitted the orders, for the execution of such contracts, to the manufacturers, or they have been sent by the dealers themselves; and sometimes one of these persons, making such contracts with the dealers here, and finding that his correspondents could not completely execute them, has employed an agent in England to purchase in the market what was needed to complete the orders received by him. It also appears to have occasionally, though rarely, happened, that the dealers here send orders to an agent in England, when some particular articles are desired, and they do not know to what manufacturer to apply to obtain them. When the dealers here give orders to an agent of a manufacturer, or to a person established here, who is a correspondent of an English manufacturer, or send their orders themselves directly to a manufacturer, they pay no commission. In the other cases mentioned, in which the merchandise is bought in the market, either for the dealers, or for the person here who undertakes to supply the dealers, a commission is paid; and the evidence tends to prove that, in the absence of a special contract, two and a half per cent. is the usual rate of commission, when any is paid. The legality of adding the amount of a commission, in so many of the instances now in question, as occurred after the first day of April, 1851, depends upon the first section of the act of the 3d of March, 1851 (9 Stat. 629), which went into operation on that day. Eleven of the importations having been made prior to that day, are governed by the sixteenth section of the act of the 30th of August, 1842 (5 Stat. 563). But this difference is not material, the language of the two acts touching commissions, being the same, the last act having been passed to

fix the time to which the valuation should have reference, in consequence of the decision of the supreme court of the United States, in the case of Greely v. Thompson, 10 How. [51 U. S.] 225. Each of these acts, after directing the value of the article, in the markets of the country of exportation, to be ascertained, further says: "And to such value or price shall be added all costs and charges, except insurance, and including, in every case, a charge for commissions at the usual rates."

The plaintiffs maintain, that the purpose of congress was to have the value of the article, when ready to go into consumption here, ascertained; that, for this purpose, there was to be added to its cost or value abroad the expenses of procuring and bringing it here; that if, from the nature and general course of the trade, a charge for commissions is not usually, in fact, incurred, then such a charge does not usually enter into, or constitute a part of, the value of the articles when ready for consumption here; and, therefore, to include a commission in such cases would be merely arbitrary, and not in accordance with the object in view, which was to ascertain the actual and true value. And it is argued, that the language of the act admits of an interpretation to this effect; not that in every case a commission was to be added, but that it should be added only in those cases in which it was usual to pay a commission; and in every case, when added, it should be at the usual rates. It must be admitted, that this is not the natural meaning of the words of the law. A direction to include, in every case, a charge for commissions at the usual rates, is certainly not complied with if such a charge is omitted in any case. The words, "in every case," apply to the act of including a commission, as well as to the rate of that commission. It is necessary to find sufficient reasons for the rejection of this natural and obvious meaning of the language of congress, and the adoption of a different and more restricted rule; and it is not a sufficient reason that the court does not perceive the propriety or practical expediency of the rule as expressed in a revenue law. A striking illustration of this may be seen in a recent case in the supreme court of the United States. Lawrence v. Caswell, 13 How. [54 U. S.] 488. The act of March 2, 1799, § 59 (1 Stat. 672), had directed an allowance of two per cent. to be made for leakage of liquors in casks, paying a specific duty by the gallon. The tariff act of 1846 [9 Stat. 42] had repealed the specific, and substituted ad valorem duties on all liquors. No reason could be given why the allowance should be made in the one case and not in the other. But the court held, that the deduction could not be made, although the effect was to include in the valuation what, owing to the usual leakage, would not go into consumption in this country.

It is true, that to add a charge for commissions in all cases, including those in which it is not usual to pay such a charge, may be said to be in some sense arbitrary. But an examination of the legislation of congress on this subject, will show that this objection is not entitled to much weight. The act of the 2d of March, 1799, § 61 (1 Stat. 673), first prescribed a rule for fixing the valuation of merchandise for the assessment of ad valorem duties. It required the value to be estimated by adding twenty per cent. to the actual cost thereof, if imported from the Cape of Good Hope, or from any place beyond the same, and ten per cent. on the actual cost thereof if imported from any other place or country, including all charges, commissions, outside packages and insurance only excepted. I am not aware what the practice under this law was, and its meaning is not very plain; but it was made plain by the act of March 3, 1817 (3 Stat. 369), which enacted, that in all cases where an ad valorem duty shall be charged, it shall be calculated on the net cost of the article at the place whence imported, (exclusive of packages, commissions, charges of transportation, export duty, and all other charges,) with the usual addition established by law, of twenty per cent. on all merchandise imported from places beyond the Cape of Good Hope, and of ten per cent. on articles imported from all other places. The acts of April 20, 1818, § 4 (3 Stat. 434), and March 1, 1823, § 5 (3 Stat. 722), while they continued to require twenty or ten per cent. to be added to the cost, also required the charges to be included; but the first of these laws expressly excepted commissions, while the last included them among the charges to be added. The act of July 14, 1832, §§ 4, 15 (4 Stat. 590, 593), repealed the addition of twenty or ten per cent., but required that there should be added to the cost, or appraised value, "all charges except insurance." And, finally, the laws now in question direct that in every case a charge for commissions shall be included among the charges to be added to the valuation or cost.

It thus appears that, in prescribing the rules by which the valuation should be made, or the cost ascertained, congress has not attempted to reach the precise cost or value in each case, or even each class of cases. That sometimes a round sum, twenty or ten per cent., has been added to the cost abroad, to cover all charges and expenses of procuring the article, and bringing it here; sometimes this addition has been taken to cover a part only of these charges and expenses; sometimes commissions have been directed in all cases to be excluded, and sometimes to be in all cases included; the apparent purpose, in reference to these smaller items constituting part of the value here being, to prescribe some convenient general rule which would operate fairly in general,

but not to endeavor to conform it even to classes of cases of importations of some particular articles, which are procured so as to form exceptions to the general course of trade. It is true, that if commissions were never paid for the purchase of merchandise of this kind, there might be difficulty in complying with the direction contained in the act, which requires the commissions to be at the usual rate. If there were no usual rate of commissions for the purchase of crockery ware in England, it might then be necessary to ascertain whether commissions were paid for the purchase of such or similar ware imported hither from countries other than England; but I do not understand this to be necessary upon the evidence now before the court, because, although the evidence strongly tends to prove that it is not usual for the dealers to pay a commission, it also tends to prove that commissions are sometimes paid, and that, when paid, the known and usual rate is two and a half per cent. I shall therefore instruct the jury: 1. That the acts of congress required the addition of a commission in all these cases to the invoice cost, although they should find that the plaintiffs, in fact, paid no commission, and that it is not customary for the importers of crockery ware from England into this country to pay a commission. 2. That the rate of commission, added in these cases, being that prescribed by the secretary of the treasury as usual, it is incumbent on the plaintiffs to show that it is higher than the rate usually paid, when any commission is paid, otherwise their verdict must be for the defendant.

It remains to consider the objection taken to the protest. The act of February 26, 1845, requires the person paying duties, as a preliminary requisite to the maintenance of an action to recover them back, to sign a protest in writing, "setting forth distinctly and specifically the grounds of objection to the payment thereof." The law having confided to the secretary of the treasury the power to determine, in the first instance, what sums shall be exacted as duties, but having also secured to the citizen a right of appeal to the judicial tribunals from his decision, this act of congress has required the importer, before making the payment, to specify, in writing, the grounds of his objection; and it follows, that when his appeal comes to be heard by the courts, he must be confined to such grounds of objection to the payment as his protest contains. Now these protests contain only one ground, namely, that the plaintiffs "pay no such commissions," as are added. There is certainly a great want of distinctness in this specification. It may mean that they pay less commissions than are added, or that they pay none. Giving to it the most liberal interpretation, and the broadest popular meaning, which, perhaps, under this act of con-

gress, requiring the protest to set forth distinctly and specifically the grounds of objection, I should hardly be warranted in doing, still it amounts only to this, that the plaintiffs do not pay commissions. It does not set forth the ground of objection to the payment taken at the bar, that commissions are not usually paid in this trade of importing crockery ware from England, nor that there is no usual rate of commission, nor that two and one half per cent. is not the usual rate of commission. It has not been attempted to maintain that the payment was illegally exacted, merely because the plaintiffs paid no commissions. Yet this is the only ground of objection set forth in the protest; and for this reason I must instruct the jury that the action cannot be maintained.

The plaintiffs elected to have a nonsuit entered.